**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Karla Shock, | : | Case No. 3:12-CV-1240 |
| Plaintiff, | : | |
| v. | : | |
| St. Rita's Medical Center, | : | **MEMORANDUM AND** |
| Defendant, | : | **ORDER** |

### I. INTRODUCTION

Plaintiff Karla Shock ("Plaintiff") seeks money damages, reinstatement, and liquidated damages resulting from an alleged unlawful termination of employment in violation of the Age Discrimination in Employment Act ("ADEA"). Plaintiff also seeks relief on defamation and invasion of privacy claims (Docket No. 1). Pending is Defendant St. Rita's ("Defendant") Motion for Partial Judgment on the Pleadings, filed June 19, 2012, with regard to the defamation claim (Docket No. 7), Plaintiff's Opposition, filed July 18, 2012 (Docket No. 14), and Defendant's Reply, filed July 20, 2012 (Docket No. 15). For the reasons that follow, Defendant's Motion for Partial Judgment on the Pleadings is granted.

1

## II. FACTS

Plaintiff is a fifty-seven (57) year old resident of the City of Lima, Ohio (Docket No. 1, p. 2 of 6). She was employed by Defendant as a Licensed Practical Nurse ("LPN") beginning some time in 1988 (Docket No. 1, pp. 2-3 of 6). Plaintiff remained employed by the Defendant until the date of her termination, June 17, 2011 (Docket No. 1, p. 2 of 6). On June 17, 2011, Plaintiff was allegedly falsely accused by Defendant of violating regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and was subsequently terminated, allegedly for illegal, insubordinate, and unethical conduct (Docket No. 1, pp. 2-3 of 6). According to Plaintiff, subsequent to her dismissal, details of her termination were published to employees of Defendant who did not have a need to know (Docket No. 1, pp. 3-4 of 6). Plaintiff also claims she has been forced to self-publish the details of her alleged wrongful termination (Docket No. 1, p. 5 of 6).

## III. PROCEDURAL HISTORY

Plaintiff states that on November 27, 2011, she filed a charge of age discrimination with the Ohio Civil Rights Commission and the United States Equal Opportunity Commission, charge number 22A-2012-00532c (Docket No. 1, pp. 1-2 of 6). On May 17, 2012, Plaintiff filed a Complaint in the United States District Court for the Northern District of Ohio, Western Division, alleging a violation of the ADEA and seeking money damages, reinstatement of employment, and liquidated damages (Docket No. 1). Plaintiff's Complaint also set forth claims for defamation and invasion of privacy (Docket No. 1, pp. 3-6 of 6). Defendant filed its Answer on June 13, 2012, denying Plaintiff's allegations and setting forth multiple affirmative defenses (Docket No. 5).

On June 23, 2012, both parties consented to the jurisdiction of the undersigned Magistrate in accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, agreeing to have the

2

undersigned Magistrate conduct any and all further proceedings in the case, including trial and the entry of a final judgment (Docket No. 10). On July 13, 2012, this Magistrate issued an order directing counsel for both parties to discuss with their clients a potential conflict of interest stemming from this Magistrate's current service on the Mercy Health Partners Board of Trustees (Docket No. 12). Counsel was instructed to file a stipulation either waiving the potential conflict of interest or requesting the consent to the magistrate be withdrawn and the case returned to the docket of Judge Jack Zouhary by July 18, 2012 (Docket No. 12). On July 18, 2012, the parties filed their stipulation waiving the potential conflict of interest (Docket No. 13).

On June 19, 2012, Defendant filed for Partial Judgment on the Pleadings under Fed. R. Civ. P. 12(c) with regard to Plaintiff's second claim for relief, defamation (Docket No. 7). Plaintiff filed its Opposition on July 18, 2012 (Docket No. 14). Defendant filed a Reply on July 20, 2012 (Docket No. 15).

### IV. STANDARD OF REVIEW

This Court set forth the standard of review for a motion under Fed. R. Civ. P. 12(c) in *EEOC v. Faurecia Exhaust Sys.*, 601 F.Supp.2d 971 (N.D. Ohio 2008):

> Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (*citing Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (*quoting Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). The motion is granted when no material issue of fact exists and the party making the motion is entitled

> to judgment as a matter of law. *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

601 F.Supp.2d at 973 (internal quotations omitted).

## V. ANALYSIS

### A.  DEFENDANT'S ALLEGATIONS

In its Memorandum in Support of its Motion for Partial Judgment on the Pleadings, Defendant alleges Plaintiff's allegations of defamation are conclusory and general in nature and fail to set forth a plausible claim for relief (Docket No. 7, p. 2 of 5). Specifically, Defendant alleges Plaintiff fails to identify *who* allegedly made a defamatory statement regarding her termination from Defendant and *what* was actually said (Docket No. 7, pp. 2-3 of 5). Defendant also dismisses Plaintiff's claims that Plaintiff has been forced to self-publish the reasons for her termination (Docket No. 7, pp. 2-3 of 5).

### B.  PLAINTIFF'S RESPONSE

In her Opposition, Plaintiff asserts she has sufficiently pled each of the required elements of defamation (Docket No. 14, p. 2 of 7). Plaintiff alleges that it is *not* necessary for her to specifically identify who made the defamatory statement (Docket No. 14, pp. 3-4 of 7). Plaintiff also asserts that she properly pled the content of the alleged defamatory statement when she stated Defendant accused her of "illegal, insubordinate unethical conduct" (Docket No. 14, p. 4 of 7). Plaintiff also maintains that she properly fulfilled the third party requirement by identifying two parties to whom the alleged defamatory statement was published: employees of Defendant who did not need to know and potential employers of Plaintiff (Docket No. 14, pp. 4-7 of 7).

### C.  DISCUSSION

**1. PROPER PLEADINGS**

Under Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Traditionally, a complaint needed only to "give the defendant fair notice of what the plaintiff's claim [was] and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under *Conley*, "a complaint should not be dismissed for failure to state a claim unless it appear[ed] *beyond doubt* that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 46-47 (emphasis added).

In 2007, the Supreme Court altered this traditional construction in *Bell Atlantic Corp. v. Twombly*, (550 U.S. 544 (2007)). In *Twombly*, the Court held that, while a complaint does not need to contain *detailed* factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. The Court specifically denied requiring a heightened fact pleading; rather, a complaint must contain "enough facts to state a claim for relief that is *plausible on its face*." *Id*. at 570 (emphasis added).

The Court further explained this plausibility requirement in *Ashcroft v. Iqbal*, (556 U.S. 662 (2009)):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly* . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 677-78 (internal citations omitted). The level of factual detail needed to make a claim plausible varies with the complexity of the claim. *Id.* Under *Iqbal*, determining whether a complaint states a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010); *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1246 (10th Cir. 2008).

Prior to *Twombly* and *Iqbal*, the specific elements of a claim were not important: the focus was on whether the pleading gave fair notice of the claim asserted. *See* 2-8 Moore's Federal Practice - Civil § 8.04(1)(a) (2012). In *Swierkiewicz v. Sorema N.A.* (534 U.S. 506, 510-12 (2002)), the Supreme Court rejected the notion that courts should measure a pleading's accuracy by the elements of the claims asserted. This standard was called into question by the 2005 case *Dura Pharmaceuticals, Inc. v. Broudo* (544 U.S. 336 (2005) (Supreme Court held that a plaintiff must plead factual allegations of a specific element of securities fraud, namely that the defendant's fraud caused an economic loss). However, "regardless of whether a pleading needs to provide *factual support* for every element of a claim in order to provide fair notice, . . . the analysis of whether a pleading states a 'plausible' claim . . . begins with an analysis of the elements of the claim." 2-8 Moore's Federal Practice - Civil § 2.08(1)(c) (emphasis added).

    **2.**    **DEFAMATION**

In order to maintain an action for defamation, Ohio law requires a Plaintiff to prove: "(1) a

false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; . . . (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (Ohio Ct. App. 1996). There are two kinds of defamation: defamation *per se* and defamation *per quod*. *Id*. at 207. Defamation *per se* occurs when "material is defamatory on its face." *Id*. Defamation *per quod* occurs when "material is defamatory through interpretation or innuendo." *Id*.

In her Complaint, Plaintiff states the following with regard to her claim for defamation: (1) Plaintiff was terminated for allegedly violating HIPAA regulations and accused of "illegal, insubordinate, unethical conduct," both of which are false; (2) Defendant published the reasons surrounding Plaintiff's termination to its employees "who did not have a need to know;" (3) Defendant published these reasons "with willful disregard of the truth or falsity of them and/or with deliberate knowledge that these allegations were false," and acted with "reckless and wanton disregard of the truth [or] falsity of the allegations motivated by a vendetta to procure [Plaintiff's] termination which was based on actual malice;" (4) through this publication Defendant has "defamed Plaintiff's character and damaged her reputation as a competent employee and professional and honest individual and destroyed her employment career;" and (5) as a result of this publication Plaintiff has "suffered the loss of her job position, past and future wages and benefits, diminished earning capacity, professional damage, . . . great mental and emotional stress, anxiety, humiliation and embarrassment . . . [and] has also been forced to expend court costs and attorney's fees" (Docket No. 1, pp. 3-4 of 6).

In plain terms, Plaintiff alleges Defendant, or an agent thereof, made false, unprivileged statements regarding her termination and the reasons for that termination to third parties. However, Plaintiff sets forth no proof that any person associated with Defendant made a statement regarding her

termination to anyone. Plaintiff fails to identify *who* she believes made a statement, *what* that person said, or *when* and in what context that person said it. Plaintiff's Complaint contains only general accusations which are simply not enough to satisfy the plausibility requirement set forth in *Twombly*. Without more specific detail, Plaintiff's Complaint simply sets forth "naked assertion[s] devoid of further factual enhancement," and does not offer more than a "sheer possibility that [. . . ] [D]efendant has acted unlawfully." *Iqbal*, 556 U.S. at 677-78.

### a. IDENTIFICATION OF SPEAKER

It is unclear as to whether a plaintiff with a claim for defamation must provide the specific identity of the speaker when a defendant is an employer of multiple employees. *See Howell v. Stark Cnty. Cmty. Action Agency*, 63 F.Supp.2d 843, 850 (N.D. Ohio 1999) (court held the plaintiff neglected to identify who made the alleged defamatory statement and on what date the alleged defamatory statement was made. As a result, the court granted the defendant's motion for summary judgment on the plaintiff's defamation claim); *Contra Yellowbook USA, Inc. v. Brandeberry*, 2011 U.S. Dist. LEXIS 73555, *11 (S.D. Ohio 2011) (court held that it is irrelevant for purposes of summary judgment whether the plaintiff identified, by name, the individual representative of the defendant who made the alleged defamatory statement. As a result, the court denied the defendant's motion for summary judgment on the defamation claim).

However, failure to identify an employee, even by a generic departmental title, provides little more than a simple recitation of an element of defamation. In her Complaint, Plaintiff essentially claims that Defendant said something it should not have said. Defendant is an Ohio corporation with more than twenty employees, likely many more than twenty employees. Without more specific identification, Defendant does not even have a starting point for discovery. Even more importantly,

Defendant cannot know if discovery is even necessary. For example, it is entirely possible that the alleged speaker is protected by qualified immunity or privilege regarding the publication of the alleged defamatory statement.[1]

Therefore, Plaintiff's failure to specifically identify *who* made the alleged defamatory statement prevents Plaintiff's claim from being plausible and is, on its own, a sufficient basis to grant Defendant's Motion for Judgment on the Pleadings.

### b. CONTENT AND CONTEXT OF THE STATEMENT

According to Plaintiff, the alleged defamatory statement accused her of "illegal, insubordinate, unethical conduct" within the context of a HIPAA violation (Docket No. 14, p. 4 of 7). The Complaint and Plaintiff's Opposition to Defendant's Motion fail to iterate any further detail as to the actual content or context of the statement. From Plaintiff's pleadings, it is impossible to determine whether the phrase "illegal, insubordinate, unethical conduct" is a direct quote from Defendant or an agent thereof, or if it is simply Plaintiff's summary of the alleged defamatory statement. From the information provided, Defendant cannot even know if the alleged defamatory statement is true or false, the foundational requirement to maintain a defamation claim.

In support of its position, Defendant cites to the 2010 case *Smith v. Bd. of Trs. Lakeland Cmty. College*, (746 F.Supp.2d 877 (N.D. Ohio 2010)). In *Smith*, the plaintiff, an African American female, was employed by the defendant community college. 746 F.Supp.2d at 883. The plaintiff was initially employed as a full-time tenure track instructor, under a probationary contract for the 2006-2007

---

[1] Under Ohio law, "the doctrine of qualified privilege provides that statements made in good faith on a matter of common interest between an employer and an employee, *or between two employees, concerning a third employee* are protected in an action for defamation." *Quintile v. Medina Co.*, 2008 U.S. Dist. LEXIS 47556, *23 (N.D. Ohio 2008) (*citing Evely v. Carlon Co.*, 4 Ohio St.3d 16 (Ohio 1983)) (emphasis added).

9

academic year. *Id*. at 884. Her contract was subsequently renewed for the 2007-2008 and 2008-2009 academic terms. *Id*. In January 2009, the plaintiff was informed that her probationary contract would not be renewed. *Id*. at 885. Following an internal grievance process during which her non-renewal was upheld by the defendant's Board of Trustees, the plaintiff filed her complaint, alleging seven causes of action, including defamation. *Id*. at 887-88. The defendant moved to dismiss the defamation claim under Fed. R. Civ. P. 12(b)(6), alleging that the plaintiff failed to state a claim because she provided no details regarding the alleged defamatory statement. *Id*. at 903. "For example, it is unclear who specifically made the statement, to whom it was made and when, and there is no context for the alleged publication of the statement." *Smith*, 746 F.Supp.2d at 903. Rather, the plaintiff simply alleged the defendant published written statements describing her as "defiant." *Id*. The district court agreed with the defendant and dismissed the plaintiff's defamation claim, stating that the plaintiff's general description of the alleged defamatory statement was not sufficient. *Id*.

Plaintiff maintains that she did more than just allege a false accusation of a violation of HIPAA. According to Plaintiff, by including the phrase "illegal, insubordinate, unethical conduct," she properly pled this element of her defamation claim (Docket No. 14, p. 4 of 7). To support its position, Plaintiff cites to *Boutsicaris v. Akron Gen. Medical Ctr.* (1997 Ohio App. LEXIS 2041 (Ohio Ct. App. 1997)). In *Boutsicaris*, the plaintiff was a surgeon employed by the defendant hospital in both a clinical and teaching capacity. 1997 Ohio App. LEXIS 2041 at *2. After one of the plaintiff's patients died, the plaintiff was placed under operative review and subsequently cleared of any wrongdoing. *Id*. Months later, following a laparoscopic surgery, several medical residents contacted the defendant's surgical chair alleging the plaintiff's surgery had failed. *Id*. at *3. After an investigation, the plaintiff was again cleared of any wrongdoing but was terminated from the defendant's teaching program. *Id*. at

*3-4. An internal review upheld this decision. *Id*. at *5. The plaintiff then filed suit, alleging, *inter alia*, defamation. *Id*. at *10. In his complaint, the plaintiff stated that the surgical chair and residents had made "disparaging remarks" about him and that the surgical chair repeated to another physician the "residents' allegations that [the plaintiff] had blamed one of them for complications arising with a patient." *Boutsicaris*, 1997 Ohio App. LEXIS at *16. The defendant moved for, and was granted, summary judgment on this claim. *Id*. On appeal, the plaintiff argued that he sufficiently set forth the substance of the alleged defamatory claim; the defendant disagreed. *Id*. at *15-16. The appellate court sided with the plaintiff, stating the plaintiff's complaint sufficiently set forth the content of the alleged defamatory statement. *Id*. at *17. Furthermore, the court pointed to a letter and deposition of another physician which contained the specific statements alleged by the plaintiff to be defamatory. *Id*.

Plaintiff's situation is different than that set forth in *Boutsicaris*. In that case, the court was clear that although the plaintiff's complaint failed to include any specifics of the alleged defamatory statement, the plaintiff clearly cited the specific statements in his response. *Boutsicaris*, 1997 Ohio App. LEXIS 2041 at *15-16. The *Boutsicaris* court also relied on a letter and deposition from a doctor from the defendant's Medical Council which contained the statements that the plaintiff claimed were defamatory. *Id*. at *17. In the case at hand, Plaintiff has failed to come forward with any additional information as to either the content or context of the alleged defamatory statement, making the situation more like that in *Smith*. Accordingly, the Magistrate finds Plaintiff failed to adequately plead the content or context of the alleged defamatory statement.

      **c.**    **THIRD PARTY**

In her Complaint, Plaintiff states that the reasons for her termination were "published to

employees of Defendant who did not have a need to know" (Docket No. 1, p. 4 of 6). According to Plaintiff, this broad statement is sufficient identification of the parties to whom the alleged defamatory statement was made. This Magistrate does not agree. Plaintiff not only fails to identify the precise identities of the employees who allegedly "did not have a need to know" (Docket No. 1, p. 4 of 6), but she also fails to set forth exactly how or when such communication was made. Without knowing the specific identity of the employees, it is impossible for Defendant to know how to respond and proceed. Defendant has no way of knowing which of its employees to question about the situation during discovery or where evidence of the alleged transmittal of a defamatory statement can be found.

    d.    SELF-PUBLICATION

Finally, Plaintiff's Complaint alleges that Defendant has forced her "to self publish [ . . . ] scurrilous and false charges to potential employers in connection with her attempts to secure employment" (Docket No. 1, p. 4 of 6). The "forced republication doctrine provides for proof of publication where a defamed person is forced to republish defamatory statements to a third party, such as a person who is required to state the reasons for leaving his or her former employer when completing an application for employment. The doctrine has not, however, expressly been recognized under Ohio law." *Golem v. Put-In-Bay*, 222 F.Supp.2d 924, 935 (N.D. Ohio 2002) (*quoting Schacht v. Ameritrust Co.*, 1994 Ohio App. LEXIS 1125, *8 n.3 (Ohio Ct. App. 1994) (*citing Atkinson v. Stop-N-Go Foods, Inc.*, 83 Ohio App.3d 132 (Ohio Ct. App. 1992)).

Defendant dismisses Plaintiff's allegation of forced self-publication, citing *Potter v. Rets Tech Ctr.*, 2008 Ohio 993 (Ohio Ct. App. 2008). In *Potter*, the plaintiff was a nursing student who was assaulted by one of the defendant's instructors. 2008 Ohio 993, *P1-P2. Following the assault, the plaintiff was dismissed, allegedly for, among other things, a HIPAA violation. *Id*. at *P4-*P5. The

plaintiff filed a written grievance with the school and a complaint with the Ohio Board of Nursing. *Id*. The plaintiff and the school later came to an agreement whereby the plaintiff would be readmitted as long as the plaintiff agreed to hold the school harmless with respect to the assault. *Id*. at *P6-P7. The plaintiff was later again terminated from the school. *Id*. at *P10. The plaintiff filed suit alleging, *inter alia*, defamation. *Id*. at *P12. The school was granted summary judgment on the defamation claim. *Potter*, 2008 Ohio 993 at *P43. On appeal, the plaintiff alleged that defamation occurred because "prospective employers may learn of the alleged HIPAA violation." *Id*. at *P44. The court held that possible publication to a potential future employer did not constitute publication to a third party in the context of a defamation claim. *Id*.

Plaintiff disagrees with Defendant's use of this case, arguing that, unlike in *Potter*, Plaintiff has already been forced to self-publish the alleged defamatory statement (Docket No. 14, p. 5 of 7). However, Plaintiff has failed to provide any detail in her pleadings as to when and to whom she has been forced to self-publish the alleged defamatory statements. Furthermore, Plaintiff fails to provide any reason as to *why* she had to allegedly self-publish the reasons for her loss of employment. Plaintiff asks this Court to consider the argument that Defendant is liable for defamation because it *knew or should have known* Plaintiff would have to repeat the alleged defamatory statement to potential employers. No Ohio court, however, "has yet embraced the idea that an alleged victim of defamation can satisfy the publication element of the tort by publishing it himself, i.e. to prospective employers." *Guy v. McCartney*, 2002 Ohio 3035, *P35 (Ohio Ct. App. 2002). Without more information, the Magistrate cannot apply the self-publication doctrine to Plaintiff's defamation claim.

## VI. CONCLUSION

Given that Plaintiff's pleadings fail to satisfy the plausibility standard required by Federal Rule

of Civil Procedure 8(a) and the standard set forth in *Twombly*, Defendant's Motion for Partial Judgment on the Pleadings is granted.

/s/Vernelis K. Armstrong<br>United States Magistrate Judge

Date: October 29, 2012